**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**Chad Mitchell Swadling,**

       **Plaintiff,**         **Civil Action No. 11-10421**

    **vs.**                      **District Judge Nancy G. Edmunds**

**Michael J. Astrue,**         **Magistrate Judge Mona K. Majzoub**
**Commissioner of Social
Security,**

       **Defendant.**
_____/

## Report and Recommendation

Before the Court is Plaintiff Chad Mitchell Swadling and Defendant the Commissioner of Social Security's motions for summary judgment. (Dkt. 9, 11.) The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[1]

### I.     Recommendation

Because the Court recommends finding that the ALJ's RFC and hypothetical question posed to the vocational expert is supported by substantial evidence, thereby rendering the vocational expert's testimony substantial evidence on which the ALJ appropriately denied Plaintiff's disability benefits request, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

### II.    Report

---

[1] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

1

**A.     Facts[2]**

    **1.     Procedural facts**

On April 25, 2006 Plaintiff filed for disability and disability insurance benefits and supplemental security income benefits. (AR at 42.) Plaintiff alleged that he became disabled on February 14, 2006. (*Id.*) Plaintiff's claims were initially denied. On December 12, 2006 he requested a hearing. (*Id.*) On February 4, 2009 Plaintiff testified and appeared at the hearing. (*Id.*) On March 2, 2009 the ALJ denied Plaintiff's request. Plaintiff sought review of the ALJ's decision. (*Id.* at 12.) On November 29, 2010 the Appeals Council denied Plaintiff's request for review. (*Id.* at 1.) On February 2, 2011 Plaintiff sought judicial review of Defendant's determination by filing this case. (Dkt. 1.)

    **2.     Plaintiff's ALJ hearing**

On February 4, 2009 Plaintiff had his hearing. (AR at 17.) Plaintiff related how a care provider came over every day to help him with his medications and take him shopping. (*Id.* at 23.) Plaintiff stated that the care provider also did light housework, cleaned, picked up, and did the laundry. (*Id.* at 24.) He also stated that he did not drive, but only because he had had a DUI in the past. (*Id.* at 25.) Plaintiff stated that he did not see a therapist, a psychiatrist, or a psychologist–he only took medicine for a psychiatric disorder. (*Id.* at 29-30.) Plaintiff testified that he had problems with his memory. (*Id.* at 30.) He stated that these problems manifested themselves in forgetting to take his medications. (*Id.*)

At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

---

[2]As Defendant points out, Plaintiff focuses his argument on the ALJ's failure to account for Plaintiff's mental limitations in the RFC. The Court therefore focuses its fact section on the facts relevant to Plaintiff's mental limitations.

> [A]ssume an individual the same age, education and work experience as our Claimant today and assume that this individual has a residual functional capacity on an exertional level for light work as that term is defined . . . . And also assume that this individual could only use his hands for occasional handling and fingering and would be limited to unskilled work; that is, just work that required simple one, two step instructions.

(*Id*. at 30-31.) The vocational expert testified that there were a number of jobs that Plaintiff could perform, nationally, including security guard, usher and attendant, transportation attendant, and counter clerk. (*Id*. at 32.)

### 3. The ALJ's decision

On March 2, 2009 the ALJ issued his written decision denying Plaintiff's disability request. The ALJ determined that Plaintiff's adjustment disorder with depression was a severe impairment. (AR at 44.) Despite the severe impairment determination, the ALJ held that Plaintiff's mental impairment did not meet or medically equal Listing 12.04 or 12.09. (*Id*. at 45.) The ALJ evaluated the Paragraph B criteria. The ALJ first held that Plaintiff had a moderate restriction in activity of daily living. (*Id.*) The ALJ reasoned that Plaintiff stated that he had a caregiver, but that he did live at home, alone, and he was able to take care of his personal care needs and deal with his finances independently. (*Id.*) The ALJ held that Plaintiff had mild difficulties in social functioning. (*Id.*) The ALJ reasoned that Plaintiff admitted to generally getting along with others. (*Id.*) The ALJ further reasoned that Plaintiff did not report having any problems with his caregiver or any other persons. (*Id.*) And as to concentration, persistence, or pace, the ALJ held that Plaintiff had moderate difficulties. (*Id.*) The ALJ explained that Plaintiff stated that he had memory problems, but the ALJ also noted that Plaintiff was able to refer to an exhibit in the record and remember the medications he took. (*Id.*) The ALJ further explained that Plaintiff was able to testify "as to the events that precipitated his alleged disability and to the side effects of his medications without

3

difficulty." (*Id.*)

The ALJ then stated that he used his evaluation of the Paragraph B criteria to craft the RFC. (AR at 46.) The ALJ stated, "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the [paragraph B] mental function analysis. (*Id*.)

The ALJ stated,

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can only use his hands for occasional handling and fingering; and he is limited to unskilled work consisting of simple, one or two step instructions.

(AR at 46.)

In discussing Plaintiff's mental impairment, the ALJ recounted that Plaintiff stated that he took psychotropic medications. (AR at 48.) The ALJ noted Plaintiff's memory and anxiety issues. (*Id.*) The ALJ also noted that Plaintiff was not receiving therapy for his mental health issues. (*Id.*) The ALJ further noted that Plaintiff had received diagnoses of adjustment disorder with depressed mood, reactive depression, and a history of alcohol dependence. (*Id.*) Another doctor diagnosed anxiety and depression. (*Id.*)

With regard to concentration, persistence, or pace, the ALJ stated that Plaintiff had moderate difficulties. (AR at 45.) He then explained:

> [Plaintiff] testified that he has memory problems. He referred to an exhibit in the medical record while testifying as to which medications he takes. However, he was able to testify as to the events that precipitated his alleged disability and to the side effects of his medications without difficulty.

(*Id.*)

Despite the diagnoses, the ALJ found that Plaintiff's mental impairments did not pose a major impediment to Plaintiff's ability to function. (AR at 48.) The ALJ gave weight to Dr.

4

Matthew Dickson's assessment that showed that Plaintiff had mild symptoms and only some difficulties in social, occupational, or school functioning. (*Id.*) The ALJ gave weight to Dr. Dickson's opinion because "it [was] supported by the evidence and not contradicted by the medical record as a whole." (*Id.*)

### 4. Medical evidence

On May 5, 2006 Plaintiff had a disability report interview conducted. (AR at 131.) The interviewer noted that no problems in understanding, coherency, concentrating, talking, or answering were perceived. (*Id.* at 132.) The interviewer noted that Plaintiff was "[p]leasant and cooperative[.]" (*Id.* at 133.)

Plaintiff also filled out a disability report. (AR at 134.) On this report, Plaintiff stated that he had not seen anyone for emotional or mental problems. (*Id.* at 137.) Plaintiff also indicated that he had no problems with his personal care. (*Id.* at 147.) He also indicated that he did not need any special reminders to take care of his personal needs and grooming. (*Id.* at 148.) He further indicated that he did not need any help or reminder to take his medications. (*Id.*) He stated that he could handle his finances. (*Id.* at 149.)

For social activities, Plaintiff wrote on his disability report that he enjoyed talking, social drinking, and playing cards. (AR at 150.) Since his impairment, though, he stated that he had a decrease in his interest in doing his social activities. (*Id.* at 151.)

A State of Michigan Department of Human Services Medical Examination Report, conducted on June 15, 2006, determined that Plaintiff had no mental limitations.[3] (AR at 232.)

---

[3]The report also has checked boxes in: comprehension, memory, sustained concentration, following simple directions, reading/writing, and social interaction. (AR at 232.) The Court finds that these boxes were checked to indicate that Plaintiff did not have any limitations in these

5

On July 11, 2006 Dr. Matthew Dickson, Ph.D., interviewed Plaintiff. (AR at 21.) Dr. Dickson found that Plaintiff reported getting along "OK" with others. (*Id.*) Dr. Dickson also found that Plaintiff spent time with friends and family. (*Id.*) Dr. Dickson noted that Plaintiff had "satisfactory" interactions with former co-workers. (*Id.*) And Dr. Dickson noted that Plaintiff was socially appropriate during the exam–he was not particularly friendly or unfriendly, and he had appropriate eye contact. (*Id.*)

Dr. Dickson indicated that Plaintiff: lived alone; was "barely" able to cook, clean, and do laundry; was independent in self-care and personal hygiene; was able to grocery shop independently; and was able to pay bills. (AR at 242.) Dr. Dickson noted that Plaintiff did not require assistance in scheduling and keeping appointments and that Plaintiff was able to find locations independently. (*Id.*)

Dr. Dickson described Plaintiff's mental status. (AR at 242.) Dr. Dickson stated that Plaintiff seemed to be "in contact with reality throughout the examination." (*Id.*) Dr. Dickson also stated that Plaintiff was "dramatic in presentation" and "presented as depressed and tired." (*Id.*) Dr. Dickson further noted that Plaintiff "conveyed a self-pitying attitude." (*Id.*) And Dr. Dickson reported that Plaintiff "made a forced laughter sound before answering many questions, as if to emphasis [sic] the severity of his condition." (*Id.*) Dr. Dickson stated that Plaintiff said he had a "worthless" self esteem. (*Id.*) Dr. Dickson recognized that Plaintiff was "cooperative during the examination." (*Id.*)

Dr. Dickson reported that Plaintiff's speech was unimpaired and that his "stream of mental activity was spontaneous and organized. (AR at 242.) Dr. Dickson evaluated Plaintiff's mental

---

areas.

6

capacity. (*Id*. at 243.) In doing so, Dr. Dickson stated that Plaintiff did not put forth good effort on the memory tasks. (*Id*.)

Dr. Dickson ultimately concluded that Plaintiff's "psychological condition would mildly impair his ability to perform work related activities." (AR at 243.)

On October 31, 2007 Dr. Robert Bottinelli, a psychologist, examined Plaintiff for the Department of Human Services. (AR at 308.) Dr. Bottinelli noted that Plaintiff demonstrated a depressed affect and was at the verge of tears, at times. (*Id.*) Dr. Bottinelli also noted that Plaintiff was cooperative. (*Id.*) He diagnosed Plaintiff with reactive depression with a history of alcohol abuse. (*Id*. at 309.) He recommended that Plaintiff continue to seek outpatient psychiatric treatment to reduce Plaintiff's psychiatric symptoms, stabilize daily functioning, and address his substance abuse issues. (*Id.*) Dr. Bottinelli also stated, "[o]ngoing use of psychotropic medication may be an essential part of [Plaintiff's] treatment. Such treatment will be a necessary adjunct to any successful long-term attempt at vocational rehabilitation." (*Id.*)

**B.     Standards**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to

try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### 1. Framework for social security disability determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available

in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.    Analysis**

Plaintiff argues that the ALJ formed a hypothetical question that was not supported by substantial evidence. (Pl.'s Mot. for Summ. J. at 7.) He therefore argues that the vocational expert's testimony that jobs existed in the economy that he could perform cannot constitute substantial evidence on which to deny him disability benefits.[4]

Plaintiff centers his argument on the ALJ's alleged failure to properly consider Plaintiff's concentration difficulties. (*Id*. at 7-8.) Plaintiff argues that, once an ALJ determines that a claimant has "moderate" deficiencies in concentration, persistence or pace, the "ALJ must craft a hypothetical question that encompasses, in concrete terms, the substance of that finding." (*Id*. at 10.) Here, Plaintiff argues that the ALJ determined that Plaintiff had a severe impairment of an adjustment

---

[4]"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual and mental impairments.'" *Alhin v. Comm'r*, 07-12352, 2008 WL 2743954, at *3 (E.D.Mich. July 11, 2008) (Duggan, J.) (citations omitted, alteration in original).
"The Sixth Circuit has held an ALJ's hypothetical question should focus on the claimant's 'overall state,' including the claimant's 'mental and physical maladies.'" *Id*. (citation omitted). The issue "is whether the ALJ's hypothetical question 'accurately portray[ed]'" [the plaintiff's] impairments." *Id*. (citations omitted, insertion in original).

disorder with depression and that Plaintiff consequently had moderate difficulties with concentration, persistence or pace. (*Id.*) Plaintiff maintains that the ALJ failed to factor in Plaintiff's moderate difficulties with concentration, persistence, or pace into the hypothetical posed to the vocational expert. (*Id.* at 11.) Plaintiff states that this failure is a legal error that requires remand.

Plaintiff argues that the ALJ's RFC, that limited Plaintiff to "unskilled work consisting of simple, one or two step instruction," did "not sufficiently account for the entire 'moderate' limitation in the ability to maintain persistence and pace, which is the ability to complete a job on time." (Pl.'s Mot. for Summ. J. at 12.) Plaintiff expands, "the limitation to 'unskilled work consisting of simple, one or two step instructions is directly on point with [cases in this district] that resulted in remand for further proceedings because of the hypothetical not properly accommodating for the moderate deficiency in the ability to maintain concentration, persistence and pace." (*Id.*)

The Court disagrees with Plaintiff. The Court finds that substantial evidence supports the ALJ's hypothetical to the vocational expert and that the hypothetical is legally sufficient.

While Plaintiff does point to cases from this district that appear to support his argument that an ALJ must craft a hypothetical question that factors in moderate limitations in concentration, persistence, or pace, courts in this district have also held that even when an ALJ does not explicitly address moderate limitations in concentration, persistence, or pace, and only references "unskilled work," remand is not necessary when substantial evidence supports the hypothetical question.[5]

---

[5]Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and off bearing . . . or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain

For example, in *Lewicki v. Commissioner of Social Security*, 09-11844, 2010 WL 3905375, at *3 (E.D.Mich. Sept. 30, 2010) (Ludington, J.), the court, citing the report and recommendation, held that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work." (citations omitted). That court also stated, "[t]here may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. [The plaintiff] does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace." *Id.* The ultimate question, therefore, is whether the ALJ's decision was supported by substantial evidence. *Id. See also Schalk v. Comm'r*, 10-13894, 2011 WL 4406824, at *11, n 6, 7 (E.D.Mich. Aug. 30, 2011) (Michelson, Mag. J.) *adopted by* 2011 WL 4406332 (E.D.Mich. Sept. 22, 2011)) (discussing how "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."). *See also Roberts v. Comm'r*, 2011 WL 4407221 (Michelson, Mag. J.) (E.D.Mich. Aug. 8, 2011) *adopted by* 2011 WL 4406344 (E.D. Mich. Sept. 22, 2011) (noting that "[t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.").

---

work skills by doing unskilled jobs.  20 C.F.R. § 404.1568(a).

11

The Court agrees with the cases above as well as Defendant's argument that "a hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008) (quoting *Webb v. Comm'r*, 368 F.3d 629, 632-33 (6th Cir. 2004)).

Here, the ALJ's hypothetical question limited Plaintiff to "unskilled work" with one to two step instructions. The Court finds that the one to two step instruction limitation comports with Plaintiff's moderate limitations in concentration, persistence, or pace.[6] From the record the Court finds that Plaintiff's moderate limitations stem from his memory problems. The ALJ recognized the memory problems Plaintiff stated he suffered during the hearing and the ALJ recognized that memory issues were the only concentration limitation presented in the record. (See AR at 48 (ALJ discussed memory problems) and AR at 242 (Dr. Dickson noted that Plaintiff did not put good effort on memory tasks .)  But the ALJ also pointed out that Plaintiff was able to remember an exhibit in the medical record and was able to testify about the events that "precipitated his alleged disability[.]" (*Id*. at 45.)

Here, then, the Court finds that the one to two step limitation in the hypothetical question captures the ALJ's determination that Plaintiff suffered a moderate limitation in concentration,

---

[6]"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." "On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed with established time limits." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12(c)(3).

persistence, or pace, related to his memory. *See Adams v. Comm'r*, 10-10022, 2011 WL 63495, at *2, n 3 (E.D.Mich. Jan. 6, 2011) (Murphy, J.) ( The court noted that "[c]oncentration disorders have two aspects: the frequency of concentration lapses, and the sophistication of the work that can be performed within the limitation." (citation omitted.) The court distinguished its case by stating that the hypothetical question included "practical limitations that would reduce the occasions for distraction during work, such as [juggling] multiple tasks and interacting with other workers." The court found that the magistrate judge correctly held that the hypothetical "accurately captured both aspects of concentration disorders."). The pragmatic limitations of one to two step instructions accurately captures Plaintiff's moderate limitation. *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (holding that an ALJ's "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the plaintiff's] moderate concentration, persistence, and pace limitations such that the hypothetical was proper.") (and noting that the plaintiff did not challenge the ALJ's RFC determination.); *and Tompkins v. Comm'r*, 11-11972, 2012 WL 2003963, at *5 (E.D.Mich. May 12, 2012) *adopted by* 2012 WL 2003468 (E.D.Mich. June 5, 2012) (stating that the court declined to adopt the position that the "limitations of 'simple and repetitive,' 'routine,' or 'one to two step tasks' are *always* insufficient to address moderate deficiencies in [concentration, persistence, or pace].") (emphasis in original).

Because the Court recommends finding that the ALJ's hypothetical was not improper, the Court recommends finding that substantial evidence supported the hypothetical, and therefore that the ALJ appropriately used the vocational expert's testimony as substantial evidence to deny Plaintiff's disability claim.

**D.     Conclusion**

For the above-stated reasons, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 26, 2012                s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 26, 2012                               s/ Lisa C. Bartlett
                                                                Case Manager